IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMINA SULTAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 16-CV-08767 |
| ) | |
| M&T BANK and BAYVIEW LOAN ) | Judge John J. Tharp, Jr. |
| SERVICING LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Samina Sultan claims that the defendants added over $20,000 in "phantom financing" when she modified her home's mortgage, causing her to make higher principal payments and to pay additional finance charges. She sued the lender and the loan servicer under the Truth in Lending Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the Fair Debt Collection Practices Act. Both defendants have moved to dismiss the complaint. For the reasons explained below, the motion is granted as to the TILA claim, but denied as to the ICFA and FDCPA claims.

### BACKGROUND[1]

Samina Sultan owns her home in Downers Grove, Illinois. Compl. ¶ 8. On January 22, 2016, she received a letter from Defendant Bayview Loan Servicing LLC forwarding a proposed permanent modification of her mortgage loan (upon which she had defaulted) with Defendant M&T Bank. *Id*. at ¶ 9. The cover sheet to the loan modification stated the new unpaid principal balance of the loan was $387,365.86. *Id*. at ¶ 11. The categories comprising the unpaid principal

---

[1] All well-pleaded facts in the complaint are taken as true in considering this motion. The Court also considers the loan modification agreement attached to the motion to dismiss, as it is referred to in Sultan's complaint and is central to her claim. *See 188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

balance, however, added up to only $366,065.86. *Id*. at ¶ 12. The inconsistency was partially carried into the loan modification agreement itself, where one paragraph stated that accrued charges in the amount of $102,687.69 had been added to the existing (pre-modification) balance, but elsewhere the "taxable" addition to the original unpaid balance was listed as $119,665.86. *See* Def.'s Ex. 1, ECF No. 10-1. Sultan did not catch the error in the arithmetic and executed the proposed permanent loan modification on January 22, 2016. Compl. ¶ 9.

Thus, Sultan alleges the loan modification overstated her new balance by $21,300. Compl. ¶ 14. This "phantom financing" resulted in her paying an additional $92.36 per month which would result in payment of $44,332.80 in additional finance charges over the term of the loan. *Id*. at ¶ 15-16. Sultan was not provided with a Truth in Lending Act disclosure statement, which would have laid out the costs of her new loan. *Id*. at ¶ 17. Sultan has experienced increased stress and anxiety as a result of the issues with her loan. *Id*. at ¶ 18. On September 8, 2106, Sultan filed this lawsuit against M&T Bank as well as loan servicer Bayview Loan Servicing, claiming violations of the Truth in Lending Act ("TILA"), Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the Fair Debt Collection Practices Act ("FDCPA"). The defendants have jointly moved to dismiss the complaint for failure to state a claim.

## DISCUSSION

To survive a motion to dismiss premised on Rule 12(b)(6), Sultan need only state claims that are plausible and raise her right to relief above a speculative level. *See Arnett v. Webster*, 658 F.3d 742, 751-52 (7th Cir. 2011). Her claims under the FDCPA and ICFA clear this threshold, but her effort to invoke the requirements of TILA fails because loan modifications (as distinguished from refinancings) are not subject to TILA's disclosure requirements.

2

**I. TILA**

The Truth in Lending Act ("TILA") promotes the "informed use of credit" by requiring certain disclosures during "the extension of consumer credit." 15 U.S.C. § 1601(a). By regulation, a "refinancing" is "a new transaction requiring new disclosures to the consumer." 12 C.F.R. § 226.20(a). A refinancing occurs "when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer." *Id*. There are also several exceptions, which are not treated as refinancing, including: "A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance." *Id*. at § 226.20(a)(4).

The defendants argue that they could not have violated TILA because the loan modification agreement (and accompanying letter) was just a modification of an existing debt, rather than a new extension of credit requiring new disclosures. Sultan, they say, never satisfied the original loan obligation. The loan modification agreement explicitly states "[n]othing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part" of the original note and that the note "will remain unchanged and in full effect" with regards to all its terms and conditions as amended by the modification agreement. *See* Def.'s Ex. 1 at 2. Sultan, on the other hand, argues that the modification falls into the exception because her interest rate was increased and the new balance exceeded her old one plus the accrued charges. *See* Pl.'s Resp. at 4-5, ECF No. 16.

Unfortunately for Sultan, the commentary on the regulation explicitly states that "[a] transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing."[2] 12 C.F.R. Part 226 Supp. I.[3] Thus, Sultan can only fit into the exception she relies on (subparagraph (a)(4)) if she first meets the general definition of a refinancing—that is to say, if "the original obligation has been satisfied or extinguished and replaced by a new obligation." See *Jackson v. Am. Loan Co.*, 202 F.3d 911, 913 (7th Cir. 2000) ("The rule stated by the Commentary is that only "the cancellation of [the original] obligation and the substitution of a new obligation" amount to a refinancing."). By the terms of her agreement, Sultan's transaction with the

---

[2] The Seventh Circuit has recognized the authority of the Official Staff Commentary in interpreting this regulation. *See Jackson v. American Loan Co.*, 202 F.3d 911, 912 (7th Cir. 2000); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) ("Ordinarily, we defer to the Commentary when interpreting TILA and its disclosure requirements.").

[3] In relevant part, the Official Commentary to Section 226.20 states:

Subsequent Disclosure Requirements

Paragraph 20(a) Refinancings.
1. Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. In any form, the new obligation must completely replace the prior one.
• Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation.
• A substitution of agreements that meets the refinancing definition will require new disclosures, even if the substitution does not substantially alter the prior credit terms.
2. Exceptions. A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing. Section 226.20(a)(1) through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one.

12 C.F.R. § Pt. 226, Supp. I, Subpt. C (Westlaw).

4

defendants in January 2016 did not cancel the original obligation, and so does not constitute a refinancing. *See Rodriguez v. Chase Home Fin., LLC*, No. 10 C 05876, 2011 WL 4435633, at *3 (N.D. Ill. Sept. 23, 2011) (finding loan modification agreement is not a refinancing based on language of the agreement); *Sheppard v. GMAC Mortg. Corp. (In re Sheppard)*, 299 B.R. 753, 762 (Bankr. E.D. Pa. 2003) ("Thus, to determine whether a transaction is a refinancing, one must first apply the definition of refinancing in § 226.20(a) of Regulation Z and the Official Staff Interpretations to the transaction at issue. If the result of that analysis is that the transaction is a refinancing, one of the five exceptions may be applicable to except the transaction from the disclosures required of a refinancing. However, if the transaction is found not to be a refinancing when applying the general definition, the exceptions are not implicated.").

The contract language Sultan points to, that the provisions of the modification "supersede and replace any inconsistent provisions," lends no help to her cause. That language does not indicate that the previous obligation was extinguished, only that the modifications agreed to would govern in the event of a conflict. Indeed, if the 2016 loan modification had extinguished the previous obligation, there would be no need for a provision addressing how an inconsistency with the original terms of the loan agreement would be resolved. That inconsistencies might arise confirms, rather than refutes, that the loan modification did not extinguish Sultan's original obligation. For that reason, Sultan's loan modification was not a refinancing and new TILA disclosures were not required. The motion to dismiss the TILA claims is therefore granted.

**II. FDCPA**

Next, Bayview (the only defendant named in the FDCPA claim) claims that the FDCPA claim is facially deficient because Sultan has not alleged that its actions were taken "in connection with the collection of any debt." Def.'s Mot. at 6, ECF No. 10. Sultan acknowledges

that her complaint does not use those exact words, but that it is a reasonable inference that should be made considering the alleged misrepresentations were made in a letter accompanying an attempt to restructure the defaulted loan so she could pay it. *See* Pl.'s Resp at 7. She further argues that she should be granted leave to amend to include this representation if it is necessary. *Id*.

The Seventh Circuit has acknowledged there is no "bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Factors that are relevant include whether payment was demanded, the nature of the parties' relationship, and the purpose and context of the communication. *Id*. at 385. In *Gburek*, the Seventh Circuit found that a complaint over a letter to a debtor who was in default that offered to discuss "foreclosure alternatives" and asked for financial information stated plausibly that the letter was made in connection with the collection of a debt. *Id*. at 386.

Here, the situation is similar: Sultan's mortgage was already in default, and the letter Bayview sent in connection with the loan modification was surely in the hopes that she would sign the modification agreement and begin making payments on her debt. Bayview had no relationship with Sultan beyond attempting to collect on the defaulted loan. The letter was not an informative communication before a debt was overdue. *Compare Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998) ("A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstance wherein payments are missed and a real dun must be mailed."). At least when taking all inferences in Sultan's favor, the letter was plausibly

made in connection with collecting the debt (because if she agreed to the modification, she would presumably make payments). Thus, the motion to dismiss the FDCPA claim is denied.

### III. ICFA

The defendants make a number of arguments as to why the ICFA claim should be dismissed. First, they argue that they complied with TILA and therefore cannot be subject to ICFA liability. Second, they argue that Sultan has failed to meet the specificity requirements for an ICFA claim. Third, they assert Sultan has not demonstrated actual damages as a result of any violation.

The Illinois Supreme Court has found that "compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act." *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 18, 499 N.E.2d 440, 447 (1986). The court reasoned that ICFA did not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." *Id*. *Lanier*, however, was addressing the situation in which both TILA and ICFA applied—which is to say that both statutes imposed duties on the defendant. *Id*. In that case, the defendant had made disclosures which complied with TILA. *Id*. at 446.

Here, as discussed above, TILA required no disclosures **because it did not apply**—TILA applies to new extensions of credit and refinancings that are in effect new extensions of credit and Sultan's loan modification agreement was not a new extension of credit. M&T's non-violation of a non-applicable federal statute cannot be a defense to an ICFA claim. To say that ICFA provides a safe harbor based on compliance with TILA means that, where applicable, TILA's requirements have been satisfied. When TILA is inapplicable, however, it provides no more shelter than any of the untold number of other irrelevant federal statutes and regulations.

7

The defendants didn't violate TILA, but they didn't violate the federal regulation that prohibits use of the word "Zombie" on a wine label either. *See* 27 C.F.R. § 4.39(a)(9). The requirements imposed by each are irrelevant, so neither has anything to say about the viability of Sultan's ICFA claim.

Furthermore, the alleged ICFA violation goes beyond merely failing to provide the TILA disclosures. Part of Sultan's claim stems from the presence of the phantom financing at all. That is to say, the defendants could have made all the disclosures in the world, but if they were still attempting to get Sultan to sign a loan with fraudulent numbers, that likely could still state an ICFA claim. *See Hickman v. Wells Fargo Bank N.A.,* 683 F. Supp. 2d 779, 795-96 (N.D. Ill. 2010) (allowing ICFA claims for reducing borrower limits while disallowing failure to inform claim where defendant had complied with TILA). Thus, even if some part of the defendants' conduct was preempted by TILA, it would not merit dismissing Sultan's ICFA claim altogether.

As to the defendants' second argument, "[t]he elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (internal quotation marks omitted). Intent to deceive is not required unless the claim is for fraud. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014); *see also Czerniak v. Servis One, Inc.*, No. 15-CV-06473, 2017 WL 1196886, at *5 (N.D. Ill. Mar. 31, 2017). Here, Sultan meets the basic requirements even under the heightened fraud pleading standard under Rule 9(b): "describing the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737. Sultan has clearly alleged that the defendants hid over $20,000 of "phantom financing" in her particular loan modification and misrepresented

8

how her modified loan amount had been calculated. She has alleged that the defendants "intended that Plaintiff rely upon their calculations and statements concerning the amounts due and owing on the account at issue." Compl. ¶ 48. The statements plainly occurred in the course of commerce, satisfying the final element of an ICFA claim. The defendants could not reasonably expect more specificity in the complaint.

Finally, the defendants contend Sultan has failed to show actual damages. *Camasta,* 761 F.3d at 739 ("In a private ICFA action, the element of actual damages requires that the plaintiff suffer actual pecuniary loss.") (internal quotation marks omitted). Here, Sultan has alleged that the phantom financing "result[ed] in Plaintiff paying an additional $92.36 per month." Compl. ¶ 15. This is perhaps the simplest of all possible actual damages – being charged additional money not owed due to a lender's deception. Furthermore, the claimed loss per month is a substantial amount that rises to the level of actual damages. *Compare Warciak v. One, Inc.*, No. 16 C 7426, 2016 WL 7374278, at *5 (N.D. Ill. Dec. 20, 2016) (dismissing ICFA claim where claimed injuries were "so negligible from an economic standpoint as to render any damages unquantifiable"). Thus, the motion to dismiss the ICFA claim is denied.

\* \* \*

Sultan's loan modification was not a new extension of credit or a refinancing under TILA, so the motion to dismiss is granted as to her TILA claims. Her FDCPA and ICFA claims, however, survive the defendants' challenges and the motion to dismiss is denied as to those claims.

*John J. Tharp, Jr.*

Dated: April 7, 2017                                                                 John J. Tharp, Jr.
                                                                                      United States District Judge